# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| SUFFOLK TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>AOL INC. and GOOGLE INC.,<br><br>    Defendants. | Civil Action No. 1:12-cv-625-TSE-IDD<br><br>JURY TRIAL REQUESTED |

## MEMORANDUM IN SUPPORT OF DEFENDANT GOOGLE INC.'S MOTION TO SEVER CERTAIN CLAIMS AND TO TRANSFER REMAINING CLAIMS TO THE NORTHERN DISTRICT OF CALIFORNIA

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ....................................................................................3

    A.   Suffolk Technologies. ....................................................................................3

    B.   Google. .........................................................................................................4

    C.   AOL. .............................................................................................................6

III. ARGUMENT ..........................................................................................................6

    A.   The '835 AOL Direct Infringement Claim Should Be Severed From This
        Action Under Fed. R. Civ. P. 21 and 35 U.S.C. § 299. ...........................................6

        1.   Severance Is Warranted Where Defendants Fail To Meet the
            Joinder Requirements of Rule 20 and 35 U.S.C. § 299. ..............................7

        2.   The Direct '835 Claim Against AOL and Plaintiff's Other '835
            Claims Do Not Involve the "Same" Products and Do Not Arise
            From the Same Transaction or Occurrence. .................................8

    B.   The Remaining Claims Should Be Transferred to the Northern District Of
        California Under § 1404(a). ................................................................................9

        1.   The Remaining Claims Are Properly Venued in the Northern
            District of California. ..................................................................10

        2.   The Convenience of the Parties and Interest of Justice Strongly
            Favor Transfer to the Northern District of California. ............................11

            (a)   Plaintiff's Choice to File in a Foreign Forum Is Not Entitled
                to Deference. ..............................................................................12

            (b)   The "Center" of the Claims, and the Most Convenient
                Location for the Parties and Witnesses, Is the Northern
                District of California. ..................................................................14

            (c)   The Interest of Justice Is Better Served by Litigating the
                Remaining Claims in the Northern District of California. .............17

    C.   Alternatively, Plaintiff's Peripheral AOL Claims Should Be Severed and
        Stayed Under § 1404(a). ....................................................................................18

1. The AOL Indirect Infringement Claims Are Peripheral to the Google Claims. .......................................................................................19

2. Adjudication of the Google Claims Is Dispositive of the AOL Indirect Infringement Claims. ...................................................20

IV. CONCLUSION.........................................................................................21

## TABLE OF AUTHORITIES

**Page**

### Cases

*Acterna, LLC v. Adtech, Inc.*,
 129 F. Supp. 2d 936 (E.D. Va. 2001) ...............................................................16, 17

*Agilent Tech., Inc. v. Micromuse, Inc.*,
 316 F. Supp. 2d 322 (E.D. Va. 2004) ...............................................................10, 11

*Applied Material, Inc. v. Tokyo Seimitsu, Co.*,
 446 F. Supp. 2d 538 (E.D. Va. 2006) .....................................................................20

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
 365 U.S. 336 (1961)................................................................................................20

*Augme Techs., Inc. v. Gannett Co.*,
 No. 3:11-cv-282, 2011 WL 3207118 (E.D. Va. July 26, 2011)..............................14

*Bear Creek Techs., Inc. v. RCN Comm'cns*,
 No. 2:11-cv-103, 2011 WL 3626787 (E.D. Va. Aug. 17, 2011) .........................8, 9

*Brandywine Comm'cns Techs, LLC v. Apple Inc.*,
 No. 6:11-cv-1512, 2012 WL 527180 (M.D. Fla. Feb. 17, 2012)..............................8

*Corry v. CFM Majestic Inc.*,
 16 F. Supp. 2d 660 (E.D. Va. 1998) ....................................................12, 19, 20, 21

*In re EMC Corp.*,
 677 F.3d 1351 (Fed. Cir. 2012)...........................................................................8, 9

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
 71 F. Supp. 2d 517 (E.D. Va. 1999) .......................................................................10

*Gebr. Brasseler GmbH & Co. v. Abrasive Techs.*,
 No. 1:08-cv-1246, 2009 WL 874513 (E.D. Va. Mar. 27, 2009)............................12

*Hanna v. Graven*,
 262 F. Supp. 2d 643 (E.D. Va. May 13, 2000) ........................................................8

*Hard Drive Prods., Inc. v. Does 1-30*,
 No. 2:11-cv-345, 2011 WL 4914441 (E.D. Va. Oct. 17, 2011) ...........................8, 9

*Inline Connection Corp. v. Verizon Internet Services, Inc.*,
 402 F. Supp. 2d 695 (E.D. Va. 2005) ................................................................19, 21

*Koh v. Microtek Int'l, Inc.*,
 250 F. Supp. 2d 627 (E.D.Va. 2003) ..................................................12, 14, 15, 17

*L.G. Elecs., Inc. v. Advance Creative Computer Corp.*,
 131 F. Supp. 2d 804 (E.D. Va. 2001) .....................................................................11

*L.G. Elecs. v. Asustek Comps.,*
  126 F. Supp. 2d 414 (E.D. Va. 2000) ...............................................................................19, 20

*Lugus IP LLC v. Volvo Car Corp.,*
  No. 3:11-cv-811, 2012 WL 1715983 (E.D. Va. May 15, 2012)....................................10, 13, 19

*Lycos, Inc. v. TiVo, Inc.,*
  499 F. Supp. 2d 685 (E.D. Va. 2007) .........................................................................11, 12, 14

*Motorola Mobility, Inc. v. Apple Inc.,*
  No. 1:12-cv-20271-RNS, 2012 WL 3113932 (S.D. Fla. July 31, 2012) ...................................7

*NanoEnTek, Inc. v. Bio-Rad Labs., Inc.,*
  No. 2:11-cv-427, 2011 WL 6023189 (E.D. Va. Dec. 2, 2011)...........................................14, 16

*Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.,*
  387 F. Supp. 2d 564 (E.D. Va. 2005) ....................................................................................18

*Pragmatus AV, LLC, v. Facebook, Inc.,*
  769 F. Supp. 2d 991 (E.D. Va. 2011) .........................................................................11, 17, 18

*Telepharmacy Sols., Inc. v. PickPoint Corp.,*
  238 F. Supp. 2d 741 (E.D. Va. 2003) ....................................................................................18

*World Wide Med. Tech. LLC v. Core Oncology, Inc.,*
  No. 4:11-cv-00614 (N.D. Fla. Apr. 11, 2012) .........................................................................7

# I.     INTRODUCTION

Defendant Google Inc. ("Google") respectfully moves for the Court to (i) sever plaintiff's claim of direct infringement of U.S. Patent No. 6,081,835 ("the '835 patent") as to defendant AOL Inc. ("AOL") pursuant to Fed. R. Civ. P. 21 and 35 U.S.C. § 229, and to (ii) transfer all Remaining Claims to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Alternatively, Google requests that the Court transfer plaintiff's claims against Google to the Northern District of California, while severing plaintiff's claims against AOL and staying its indirect infringement claims until resolution of the claims against Google as to the same patents and accused technologies.

Plaintiff asserts two patents in this case, the '835 patent and the '132 patent. Plaintiff alleges that Google directly infringes the '132 patent by "generating . . . in the United States, Snippets in response to search terms provided to [its] servers." (Am. Compl. (Dkt. 52) ¶ 38.) Plaintiff accuses the same Google technology as to AOL, alleging that AOL indirectly infringes the '132 patent by "actively inducing Google to generate . . . Snippets in response to search queries" sent by AOL to Google's servers. (*Id.* ¶¶ 18, 39.)

With respect to the '835 patent, plaintiff alleges in its Amended Complaint that Google directly infringes by operating its AdSense for Content, AdSense for Search and AdWords services in the United States, and specifically accuses the process by which Google delivers advertisements to publishers' Web pages. (Am. Compl. ¶¶ 22-25, 46.)  Plaintiff further alleges that AOL (i) indirectly infringes the '835 patent by licensing Google's advertising technology (*see* Am. Compl. ¶¶ 32(b)-(c), 41), and (ii) directly infringes the same patent by operating its own, independent advertising technology ("AOL's Non-Google Advertising Technology"). (*See* Am. Compl. ¶¶ 30, 32(a), 40.)

Initially, plaintiff's claim accusing AOL's Non-Google Advertising Technology of directly infringing the '835 patent (the "'835 AOL Direct Infringement Claim") is misjoined with plaintiff's other '835 claims, which accuse Google services. AOL's Non-Google Advertising Technology and Google's AdSense for Content, AdSense for Search and AdWords services are independently designed, developed, and operated. They share no commonalities other than that plaintiff has accused both of infringing the '835 patent. Because the '835 AOL Direct Infringement Claim and plaintiff's other claims regarding the '835 patent do not arise from the "same transaction or occurrence" under 35 U.S.C. § 229, the '835 AOL Direct Infringement Claim should be severed.

Plaintiff's Remaining Claims have no connection to this District. Instead, plaintiff's allegations establish that the Northern District of California is the more convenient venue. The identified bases for infringement in the Remaining Claims relate only to Google's Search, AdSense for Content, AdSense for Search and AdWords services. Not only is Google is headquartered in the Northern District of California, but the accused services were developed and are based in the Northern District. As the "center" of the accused activity, the majority of the records regarding the accused services, as well as employees with material knowledge regarding those services, are located in the Northern District. To the extent that relevant employees are located outside of Mountain View—*e.g.*, in Beijing or New York—the Northern District of California, where Google is headquartered and "centered," is a more convenient venue than the Eastern District of Virginia.

In spite of the foregoing, plaintiff has chosen to bring this action 3,000 miles away in the Eastern District of Virginia, a venue where no party is headquartered and which bears no connection to plaintiff's claims. Plaintiff has not made a single allegation tying this case to the

Eastern District of Virginia that does not apply equally to any other district. Because allowing plaintiff's California-centered claims to proceed in this District would crowd the Court's docket while greatly burdening the parties and witnesses to this case, the Court should transfer the Remaining Claims to the more logical and convenient venue of the Northern District of California.

## II.     FACTUAL BACKGROUND

### A.     <u>Suffolk Technologies.</u>

Plaintiff Suffolk Technologies is a Delaware corporation with its address in New Jersey. (Am. Compl. ¶ 6.) Plaintiff does not allege that it conducts any business or maintains any presence in the state of Virginia. In fact, plaintiff—which was incorporated only on December 21, 2011—appears to conduct no business operations other than pursuing the present lawsuit. (*See* Tang Decl. Ex. A.)

Sometime following December 21, 2011, plaintiff purports to have received the '132 and '835 patents by assignment from the patents' original assignee, British Telecommunications plc ("BT").[1] BT, as well as the named inventors of both patents, is located in the United Kingdom. The '132 patent, which issued in 2001, relates to a "Method and Apparatus for Creating a Customized Summary of Text by Selection of Sub-Sections Thereof Ranked by Comparison to Target Items." (Am. Compl. Ex. 1.) The '835 patent, which issued in 2000, relates to an "Internet Server and Method of Controlling an Internet Server." (*Id.* Ex. 2.)

On June 7, 2012, plaintiff filed its initial Complaint in this action, accusing defendants Google and AOL of infringing the '132 and '835 patents. In the Complaint, plaintiff accused

---

[1]   As of the filing date of this motion, the U.S. Patent & Trademark Office's online assignment query database contains no record of the assignment of either asserted patent to plaintiff. (*See* Tang Decl. Ex. B.)

Google of directly infringing the '132 patent by "generating, in the United States, snippets in response to search terms provided to [Google's] servers" (Compl. (Dkt. 1) ¶ 24), and AOL of indirect infringement of the same patent by supplying search queries to Google (*see id.* ¶¶ 26-27). Plaintiff also accused Google of directly infringing the '835 patent through the operation of its AdSense for Content, AdSense for Search and AdWords services (*see id.* ¶ 35), and AOL of direct infringement of the same patent by operating its independent Non-Google Advertising Technology (*see id.* ¶ 33). On August 3, 2012, plaintiff filed an Amended Complaint. In its new complaint, plaintiff introduced new infringement theories regarding the '835 patent, additionally accusing Google of direct infringement through the operation of its AdWords service (*see id.* ¶ 46), and AOL of indirect infringement through its alleged use of Google's advertising services (*see id.* ¶ 48).

### B. Google.

Google is a Delaware corporation with its headquarters in Mountain View, in the Northern District of California. (Ong Decl. ¶ 3.) Google is not aware of any Google employees with relevant knowledge or relevant documents located anywhere in Virginia or the Eastern District of Virginia. (*Id.* ¶¶ 13-14.) Rather, Google's Mountain View campus is the primary location where Google's products—including Search, AdSense for Content, AdSense for Search and AdWords—are researched, designed, and developed. (*See id.* ¶ 4.) In its Amended Complaint, plaintiff accuses Google of infringing the '132 patent "by generating . . . in the United States, Snippets in response to search queries provided to Google's servers." (Am. Compl. ¶ 38.) Plaintiff also accuses Google of infringing the '835 patent "by operating . . . its AdSense and AdWords services in the United States." (*Id.* ¶ 46.)

Google provides Google Search, a Web search engine, as a free service to Internet users. Google Search displays the results of a user search request as an automatically generated list of

Web sites and pages. Google's Search team is based in the Mountain View campus, in the Northern District of California. (*See* Ong Decl. ¶ 7.) Engineers who have developed and possess relevant knowledge regarding the accused aspect of Search—Google's snippet technology—reside and work in the Northern District, and the employees who currently maintain Google's snippet technology are located in Beijing and New York. (*Id.* ¶ 8.) No members of the team are located in Virginia. (*See id.* ¶ 13.) Moreover, all or nearly all of Google's documents and records relating to Search, including search snippets, are located in or accessible from Mountain View. For example, any design or development documents would be maintained on secure servers located in or accessible from Mountain View. (*See id.* ¶ 9.)

Google also offers a number of advertising products and services, including AdSense for Content, AdSense for Search and AdWords. AdSense for Content is an online service for distributing advertisements to the Web pages of participating sites. The service uses automated technology to analyze the content on the pages of its participating sites, and to identify and display relevant advertisements based on the meaning of that content. AdSense for Search is an online service that allows a participating Web site to place a Google search box on its pages. When a visitor to the site enters a query into the search box, AdSense for Search will identify and display advertisements alongside the results of the visitor's search. AdWords is an online program that allows participating advertisers to place advertisements on search results pages at Google.com.

The majority of Google employees who work on Google's advertising services, including AdSense for Content, AdSense for Search and AdWords, are based in Google's Mountain View campus, which is in the Northern District of California. (*Id.* ¶ 4.) No relevant employees on these teams work in Virginia. (*Id.* ¶ 13.) All or nearly all of Google's documents and records

relating to AdSense for Content, AdSense for Search and AdWords are located in or accessible from Mountain View. Any design and development documents relating to these services would be maintained on secure servers located in or accessible from Mountain View. (*Id.* ¶ 5.)

### C. AOL.

Plaintiff also joins AOL as a defendant in the Amended Complaint and accuses it of infringing the '132 and '835 patents. With respect to the '132 patent, plaintiff claims only that AOL indirectly infringes the patent by allowing users to perform Google searches from AOL's Web sites. (*See* Am. Compl. ¶¶ 39.) With respect to the '835 patent, plaintiff accuses AOL of indirect infringement through its alleged use of Google's advertising services (*see id.* ¶¶ 32(b)-(c), 41), and direct infringement through its operation of its independent Non-Google Advertising Technology (*see id.* ¶¶ 30, 32(a), 40).

AOL's Non-Google Advertising Technology competes with Google's AdSense and AdWords services in the online advertising sphere. The two parties' technologies were independently developed and are separately operated. Plaintiff makes no allegation that Google and AOL have ever collaborated in the development or operation of their respective advertising technologies.

## III. ARGUMENT

### A. The '835 AOL Direct Infringement Claim Should Be Severed From This Action Under Fed. R. Civ. P. 21 and 35 U.S.C. § 299.

Plaintiff's claim for direct infringement of the '835 patent against AOL accuses a distinct product—AOL's Non-Google Advertising Technology—that is unrelated to, and shares no facts in common with, the rest of plaintiff's claims. Because the '835 AOL Direct Infringement Claim and plaintiff's other '835 claims relating to Google's AdSense for Content, AdSense for Search and AdWords services fail to satisfy the joinder requirements of section 299 of the Leahy-Smith

America Invents Act ("AIA"), as well as Fed. R. Civ. P. 20, the '835 AOL Direct Infringement

Claim is misjoined and should be severed from this action under Fed. R. Civ. P. 21.

### 1. Severance Is Warranted Where Defendants Fail To Meet the Joinder Requirements of Rule 20 and 35 U.S.C. § 299.

Congress explicitly codified the joinder requirements governing patent claims in

section 299 of the AIA, which states that accused infringers may only be joined in one action if:

> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a). Section 299(b) further provides that accused infringers "may not be joined

in one action as defendants or counterclaim defendants, or have their actions consolidated for

trial, based solely on allegations that they each have infringed the patent or patents in suit."

Therefore, when—as in the present case—a plaintiff joins multiple accused infringers as

defendants but fails to allege that the defendants "acted in concert or that they share liability," the

claims against the defendants should be severed. *World Wide Med. Tech. LLC v. Core*

*Oncology, Inc.*, No. 4:11-cv-00614, Dkt. 69 at 1 (N.D. Fla. Apr. 11, 2012). Allegations that

defendants use the same patented invention in different products, in competing products or in

products that are merely "related" are insufficient to satisfy this standard. *See Motorola*

*Mobility, Inc. v. Apple Inc.*, No. 1:12-cv-20271-RNS, 2012 WL 3113932, at *4 (S.D. Fla. July

31, 2012).

Courts have held that the two prongs of § 299(a)—including the requirement that any

claims must arise "out of the same transaction, occurrence, or series of transactions or

occurrences"—mirror the two-pronged joinder test of Fed. R. Civ. P. 20 and should be

consistently applied. *See, e.g., Brandywine Comm'cns Techs, LLC v. Apple Inc.*, No. 6:11-cv-1512, 2012 WL 527180, at *1 (M.D. Fla. Feb. 17, 2012) (holding that severance of claims under Rule 20 "is consistent with the [America Invents] Act, wherein the first element of Rule 20's joinder test is not satisfied when unrelated defendants are accused of independently infringing on the same patent").

The Federal Circuit recently clarified that the "same transaction or occurrence" test of Rule 20 is satisfied and joinder is appropriate in a patent case only where "the accused products or processes are the same in respects relevant to the patent." *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012). Put another way, the accused products must share an "an aggregate" of "overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." *Id.* Infringement claims that accuse "unrelated apparatuses . . . with separately sold, used and marketed products" fail to satisfy the "same transaction or occurrence" test. *Bear Creek Techs., Inc. v. RCN Comm'cns*, No. 2:11-cv-103, 2011 WL 3626787, at *4 (E.D. Va. Aug. 17, 2011). This Court has also uniformly held that where parties or claims fail to meet the joinder requirements of Rule 20, severance is appropriate pursuant to Fed. R. Civ. P. 21. *See, e.g., Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11-cv-345, 2011 WL 4914441, at *2 (E.D. Va. Oct. 17, 2011); *Hanna v. Graven*, 262 F. Supp. 2d 643, 647 (E.D. Va. May 13, 2000).

### 2. The Direct '835 Claim Against AOL and Plaintiff's Other '835 Claims Do Not Involve the "Same" Products and Do Not Arise From the Same Transaction or Occurrence.

The only relation between the '835 AOL Direct Infringement Claim, which accuses AOL's Non-Google Advertising Technology, and the other '835 claims, which accuse Google's services, is plaintiff's "allegations that [Google and AOL] each have infringed" the '835 patent. Therefore, joinder is plainly improper by the terms of 35 U.S.C. § 299(b).

Moreover, plaintiff does not, and cannot, allege any facts demonstrating that these independent accused services, developed and offered by different corporations, are "the same in respects relevant to the patent" and satisfy the "same transaction and occurrence" requirement of either 35 U.S.C. § 299(a) or Rule 20. *In re EMC Corp.*, 677 F.3d at 1359. To the contrary, the two defendants' services are entirely distinct.

Google's AdSense for Content, AdSense for Search and AdWords services were created and developed by Google employees . Google manages and operates all relevant components of these services internally.

By contrast, AOL's Non-Google Advertising Technology was developed by AOL or through the acquisition of other third party technology companies—including Trade Key, Tacoda, Buy.at and Quigo—none of which has any historical overlap with AdSense for Content, AdSense for Search or AdWords. Therefore, the defendants' services share no "overlapping facts" giving rise to plaintiff's cause of action, and instead are "unrelated apparatuses" that are "separately sold and used." *Bear Creek Techs., Inc,* 2011 WL 3626787, at *4.

Because the Google and AOL services accused of infringing the '835 patent are unrelated and do not share an aggregate of overlapping facts, plaintiff's claims with respect to the '835 patent fail to satisfy the "same transaction or occurrence" test. Accordingly, the claims are misjoined, and the Court should sever plaintiff's '835 AOL Direct Infringement Claim from this action. *See, e.g., Hard Drive Prods.*, 2011 WL 4914441, at *4.

### B. The Remaining Claims Should Be Transferred to the Northern District Of California Under § 1404(a).

Excluding the '835 AOL Direct Infringement Claim, plaintiff's allegations as to the other claims in this matter (*i.e.*, the Remaining Claims) concern only Google services—Search, AdSense for Content, AdSense for Search and AdWords. As such, the Remaining Claims have

no relation to this District.  To the contrary, the accused services were developed and designed largely in the Northern District of California, by teams of Google employees based in the Northern District of California.  Accordingly, the proper venue for the Remaining Claims is the Northern District of California.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  To determine whether transfer is appropriate under § 1404(a), a court will examine "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Agilent Tech., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004).  With respect to patent claims, "the preferred forum is that which is the center of the accused activities," and "[t]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).  In this case, the Remaining Claims could have been brought in the Northern District of California.  Moreover, because the center of the accused activities is the Northern District of California, not the Eastern District of Virginia, the interest of justice and convenience of the parties and witnesses justify transfer to the Northern District.

1.    **The Remaining Claims Are Properly Venued in the Northern District of California.**

To satisfy the requirement of § 1404(a) that the claims to be transferred could have been brought in the transferee forum, the Court must find that: "(1) venue would have been proper in the transferee district, and (2) the transferee court could exercise personal jurisdiction over all of the defendants." *Lugus IP LLC v. Volvo Car Corp.*, No. 3:11-cv-811, 2012 WL 1715983, at *2

(E.D. Va. May 15, 2012). Because venue is proper in any district in a forum in which a corporate defendant is subject to personal jurisdiction, 28 U.S.C. § 1391(c), "the tests for venue and personal jurisdiction are interchangeable for corporations." *L.G. Elecs., Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 809 (E.D. Va. 2001).

Google is headquartered in Mountain View, California, which is in the Northern District. (Ong Decl. ¶ 2.) Google therefore resides and is subject to personal jurisdiction in the Northern District. *See, e.g., Pragmatus AV, LLC, v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011). In addition, AOL maintains at least two offices in the Northern District of California and conducts business throughout the state of California. (*See, e.g.*, Tang Decl. Ex. C.) Therefore, AOL has minimum contacts with California sufficient to subject AOL to personal jurisdiction in that forum. *See id.* at 994 ("[Defendant] has an office in San Francisco and does business in the [Northern District of California]. . . . Therefore, this civil action could have been brought in that district."); *Agilent*, 316 F. Supp. 2d at 326. Because both Google and AOL reside and are subject to personal jurisdiction in California, plaintiff could have brought the Remaining Claims there, and the Court has the authority to transfer those claims to the Northern District of California.

### 2. The Convenience of the Parties and Interest of Justice Strongly Favor Transfer to the Northern District of California.

After finding that the threshold requirement of transferability has been met, the Court must then consider whether transfer is justified under section 1404(a) based on "the interest of justice and convenience of the parties." In reaching this determination, the Court considers the following factors: "(1) the plaintiff's choice of venue; (2) the convenience of the parties and witnesses; and (3) the interest of justice." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 691

(E.D. Va. 2007). All three of these factors favor transfer of the Remaining Claims to the Northern District of California.

        (a)    <u>Plaintiff's Choice to File in a Foreign Forum Is Not Entitled to Deference.</u>

In weighing the convenience of the parties and interests of justice, the first factor— plaintiff's initial choice of forum—is entitled to significant weight only if brought in plaintiff's home forum, and receives "minimal deference" if brought elsewhere. *Gebr. Brasseler GmbH & Co. v. Abrasive Techs.*, No. 1:08-cv-1246, 2009 WL 874513 at *2 (E.D. Va. Mar. 27, 2009); *see also Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 666 (E.D. Va. 1998) ("A plaintiff's choice of forum, while usually entitled to substantial weight, is here of little moment because it is neither plaintiff's nor defendants' home forum."). Conversely, "if there is little connection between the claims and [the chosen forum], that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Lycos*, 499 F. Supp. 2d at 692 (quoting *Koh v. Microtek Int'l, Inc.,* 250 F. Supp. 2d 627, 635 (E.D.Va. 2003)).

Plaintiff has no connection to the state of Virginia or to this District. Plaintiff is incorporated in Delaware and located in New Jersey. (Am. Compl. ¶ 6.) Plaintiff has made no allegations that it conducts business or maintains any presence at all in this forum. Accordingly, because plaintiff has chosen to file this litigation in a foreign forum, its choice is entitled to at most minimal deference.

Moreover, the Remaining Claims themselves bear little connection to this forum or District. Plaintiff makes conclusory allegations that Google and AOL have "transacted business in this District, have advertised and solicited business in the District, have committed acts of infringement in this District, and have established minimum contacts in this District." (Am. Compl. ¶ 5.) But the acts of infringement alleged in the Remaining Claims are not specific

to this forum. With respect to the '132 patent, plaintiff accuses Google of infringement by generating snippets in response to online search queries, and accuses AOL of indirect infringement by allegedly supplying Google with online search queries *(Id.* ¶¶ 38-39.) With respect to the '835 patent, plaintiff accuses Google of infringement "by operating its AdSense and AdWords services in the United States," and accuses AOL of indirect infringement simply by its alleged use of Google's services. (*Id.* ¶ 46, 48.) However, like Google's other Web-based products and services, Google Search, AdSense for Content, AdSense for Search and AdWords are made available uniformly to all online users in the United States regardless of their physical locations. Because plaintiff's Amended Complaint points to nothing that would differentiate this District from any other," the facts suggest little other than forum shopping" by plaintiff. *Lugus*, 2012 WL 1715983, at *5.

Finally, plaintiff's reference to defendants' offices and operations in Virginia are inaccurate and misplaced. Plaintiff alleges that Google's Reston office houses "fifty (50) employees [who] work on research, development, or design," as well as "search and advertising infrastructure . . . used to infringe the '132 and '835 patents"; and that Google maintains two other technical facilities in the state. (Am. Compl. ¶ 8.) However, no employee in Google's Reston outpost conducts any research or operations relating to the accused aspects of Google Search, Google AdSense or Google AdWords. (Ong Decl. ¶ 13.) ██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████

Plaintiff's references to AOL's research campus in Virginia also are unavailing. Plaintiff's Remaining Claims against AOL arise only from AOL's alleged use of Google

technology. (*See id.* ¶ 39, 48.) As such, few, if any, AOL witnesses are likely to be material to this claim, let alone witnesses located in this forum. Plaintiff may not use this attenuated claim to manufacture a connection between its Remaining Claims and this District. *See, e.g., Augme Techs., Inc. v. Gannett Co.*, No. 3:11-cv-282, 2011 WL 3207118, at *3 (E.D. Va. July 26, 2011) (holding that AOL's presence in Virginia "[did] not establish a substantial connection to the forum" where majority of witnesses and evidence were elsewhere). The accused technology with respect to this claim is Google's, not AOL's, and has no connection to this forum.

In summary, no aspect of the Remaining Claims specifically relates to Virginia, and no aspect of the defendants' presence in this forum specifically relates to the Remaining Claims. Because the facts suggest that plaintiff chose to bring its claims in this District for no reason other than forum shopping, this factor "militates against [maintaining this action in the Eastern District] and weigh[s] in favor of transfer to a venue with more substantial contacts." *Koh*, 250 F. Supp. 2d at 635.

        (b)    <u>The "Center" of the Claims, and the Most Convenient Location for the Parties and Witnesses, Is the Northern District of California.</u>

When evaluating the convenience of parties and witnesses, the Court considers factors such as "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Lycos*, 499 F. Supp. 2d at 693. In patent cases, the Court will consider the "preferred forum" under this factor to be that which is "the center of accused activity," or "where the infringing product was designed or manufactured." *NanoEnTek, Inc. v. Bio-Rad Labs., Inc.*, No. 2:11-cv-427, 2011 WL 6023189, at *4 (E.D. Va. Dec. 2, 2011). This is because the Court may infer that "witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material." *Koh*, 250 F. Supp. 2d at at 636-37. Because the center of the

allegedly infringing activities in this matter is the Northern District of California, not the Eastern District of Virginia, this factor alone justifies the transfer of the Remaining Claims to the Northern District of California. *See id.* at 636 ("Witness convenience often is the dispositive factor in transfer decisions.").

The majority of the Google employees who work on Google Search and Google's advertising products work at Google's Mountain View campus, in the Northern District of California. (*Id.* ¶¶ 4, 7.) In particular, the teams responsible for the research, design and development for Google's advertising products—including AdSense for Content, AdSense for Search and AdWords—as well as the teams responsible for the research, design and development for Google Search, are led by personnel located primarily in Mountain View. (*Id.*) No relevant employee on these teams lives or works in Virginia. (*Id.* ¶ 13.) Also, the employees currently responsible for managing the accused aspects of Google Search—search snippets—are located in Beijing and New York (*id.* ¶ 8) and would find it more convenient to travel to the Northern District of California than to the Eastern District of Virginia, as the Northern District is significantly closer to Beijing and appearing there would allow employees to continue working out of Google's Mountain View headquarters. Documents relating to the design, development and operation of Google Search, AdSense for Content, AdSense for Search and AdWords also are stored on servers located in or accessible from Mountain View. (*Id.* ¶¶ 5, 9.)

Moreover, key third party witnesses are likely to be located in the Northern District of California. Plaintiff's infringement claims regarding the '132 patent concern search engine technology. Many prominent search engine technologies, particularly at the time of the claimed priority date of the '132 patent, were designed and operated in the Northern District of California. These technologies include Inktomi, which powered the HotBot search engine and was

developed at the University of California at Berkeley, and AltaVista, which was used as the search engine for Yahoo! and based in Palo Alto. Accordingly, most material witnesses and documents in this case are likely to be located in the Northern District of California, at the "center of [the] accused activity," and not in the Eastern District of Virginia. *NanoEnTek*, 2011 WL 6023189, at *4.

By contrast, plaintiff's likely witnesses and sources of proof have little or no connection with the Eastern District of Virginia, and plaintiff and its witnesses will not be significantly inconvenienced by the transfer of the Remaining Claims to the Northern District of California. First, plaintiff has no presence in this forum—and given its brief existence and lack of relevant business operations, will not have much by way of material witnesses or documentary evidence in any location. Second, the inventors of both asserted patents are located in the United Kingdom, as is BT, their employer and the original assignee of both patents. (Am. Compl. ¶¶ 12-13.) Even if the Remaining Claims were to remain in this District, the inventors and any other BT witnesses would be required to fly eight hours across the Atlantic Ocean to appear in court. (*See* Tang Decl. Ex. D.) Transferring the Remaining Claims to the Northern District of California would result in an incremental increase in flight time of only three hours. (*See* Tang Decl. Ex. E.) This marginal increase in inconvenience is far outweighed by the enormous burden that would be imposed on Google by requiring it to transport all of its witnesses and evidence 3,000 miles across the country rather than simply litigating in the Northern District, the center of the accused activity. *See Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (holding that convenience analysis favored transfer to District of Hawaii where inventors of asserted patent were located in Maryland and Virginia, but center of defendant's allegedly

infringing activity was Hawaii). Third, plaintiff's counsel of record is located in Los Angeles, which is closer to the Northern District of California than to this District.

Google is aware of only one potential witness with any connection to this forum—prosecution counsel for the ·132 and '835 patents. However, the convenience of a single potential witness, who would likely not testify at trial in any event, cannot be sufficient to outweigh the fact that the Northern District of California is vastly more convenient for nearly all potentially material witnesses, as well as the production of material documentary evidence, in this matter. *See, e.g.*, *Koh,* 250 F. Supp. 2d at 638 (transferring case to Central District of California, in part based on finding that "there are substantially more witnesses and documents in that forum than in this one"); *Acterna*, 129 F. Supp. 2d at 939. Accordingly, an analysis of the convenience of witnesses and access to sources of proof weighs heavily in favor of transfer of the Remaining Claims to the Northern District of California.

   (c) <u>The Interest of Justice Is Better Served by Litigating the<br>Remaining Claims in the Northern District of California.</u>

The final factor in the Court's analysis, the interest of justice, also favors transfer of the Remaining Claims to the Northern District of California. Relevant considerations in evaluating this factor include "pendency of a related action; the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment." *Pragmatus*, 769 F. Supp. 2d at 996. While most of these items either do not apply or apply equally to this District and the Northern District of California, consideration of docket conditions suggests that the interest of justice would be advanced by transfer of the Remaining Claims.

As set forth above, neither plaintiff nor the Remaining Claims has significant ties to the Eastern District of Virginia. Accordingly, it appears that plaintiff has chosen to bring its claims

in this District solely to take advantage of the speed with which this Court is known to resolve patent disputes. However, docket speed should not be a significant factor in the balance of interests, particularly where, as in this case, the plaintiff is a non-practicing entity that will not suffer competitive harm as a result of a longer time to trial. *See id.* at 997 ("[W]hen a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'" (quoting *Original Creatine Patent Co., Ltd. v. Met–Rx USA, Inc.*, 387 F. Supp. 2d 564, 572 (E.D. Va. 2005))); *see also Telepharmacy Sols., Inc. v. PickPoint Corp.*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (holding that docket considerations "cannot be the primary reason for retaining a case in this district"). To the contrary, bringing cases that have no relation to this District may hinder this Court's ability to efficiently resolve disputes that have legitimate connections to this District. *See Pragmatus*, 769 F. Supp. 2d at 996 ("Left unchecked, allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads, unfairly slowing the cases for parties with genuine connections to this district."). Accordingly, "*transfer* [of the claims] would advance the interest of justice." *Id.* (emphasis added).

Because plaintiff could have brought the Remaining Claims against Google and AOL in the Northern District of California, and the convenience of the parties and witnesses and the interest of justice weigh strongly in favor of litigating in that venue, transfer of the Remaining Claims to the Northern District of California is appropriate under § 1404(a).

### C. Alternatively, Plaintiff's Peripheral AOL Claims Should Be Severed and Stayed Under § 1404(a).

Even if this Court concludes that transfer of the Remaining Claims against AOL ("the AOL Indirect Infringement Claims") are not warranted, this should not impede the transfer of the

Remaining Claims against Google. In that scenario, the Court instead should sever and stay the AOL Indirect Infringement Claims—which are entirely peripheral to plaintiff's core claims against Google—while transferring the Google claims to the Northern District of California.

It is well settled that "when venue . . . in a transferee district is not proper for a defendant who is only indirectly connected to the main claims, the transferor court may sever the claims as to that defendant and transfer the remaining claims to the more convenient forum pursuant to § 1404(a)." *Inline Connection Corp. v. Verizon Internet Services, Inc.*, 402 F. Supp. 2d 695, 699 (E.D. Va. 2005) (quoting *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664 (E.D. Va. 1998)). Severance is warranted where "(1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under § 1404(a)." *Id.* at 665. In the "interests of justice," the Court may then stay the severed claims pending adjudication of the transferred claims. *Corry*, 16 F. Supp. 2d at 666.

The third prong of this severance analysis is met because, as set forth in the previous Section, transfer of the Google claims is warranted under § 1404(a). The remaining two prongs are satisfied as well.

### 1. The AOL Indirect Infringement Claims Are Peripheral to the Google Claims.

A defendant is "peripheral" to a cause of action if it is only "secondarily involved" and "[does] not carry the burden of defending and producing evidence." *Id.* at 666. This Court consistently has held that "[a] patent infringement claim against a distributor is peripheral to a claim against the manufacturer." *L.G. Elecs. v. Asustek Comps.*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000); *see also Lugus*, 2012 WL 1715983, at *8; *Corry*, 16 F. Supp. 2d at 665-66.

In this case, AOL is no more than a distributor of Google's snippet generation and advertising services. Plaintiff does not allege that AOL had any "involvement in the design, development or manufacture of the allegedly infringing [services]." *Id.* Instead, plaintiff alleges only that AOL indirectly infringes the '132 and '835 patents by allowing its visitors to access *Google's* allegedly infringing technologies. (Am. Compl. ¶ 39, 48.) Indeed, plaintiff emphasizes that the AOL Indirect Infringement Claims are premised on the allegation that "the identical instrumentalit[ies] and methods are being used by both AOL and Google to infringe" the '132 and '835 patents. (*Id.* ¶ 1-2.) Because AOL has no primary involvement in plaintiff's Remaining Claims and merely offers Google's accused technologies to its customers, the AOL Indirect Infringement Claims are peripheral to plaintiff's core claims against Google.

2. **Adjudication of the Google Claims Is Dispositive of the AOL Indirect Infringement Claims.**

Plaintiff's Remaining Claims accuse AOL only of indirect infringement of the '132 and '835 patents. (*Id.* ¶ 39, 48.) By definition, without direct infringement of the patent, there can be no indirect infringement. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) ("[I]t is settled that if there is no direct infringement of a patent there can be no contributory infringement."); *Applied Material, Inc. v. Tokyo Seimitsu, Co.*, 446 F. Supp. 2d 538, 549 (E.D. Va. 2006) ("There can be no inducement of infringement without direct infringement by some party."). In this case, the AOL Indirect Infringement Claims depend entirely on a finding of direct infringement against Google. (*Id.*) Therefore, if Google is found not to directly infringe the '132 or '835 patents, AOL cannot be liable for indirect infringement of those patents. Moreover, if the transferee court finds that Google infringes the '132 or '835 patents and permits plaintiff to collect royalties from Google, plaintiff cannot then seek additional recovery from AOL. *See L.G. Elecs. v. Asustek*, 126 F. Supp. 2d at 422. Accordingly,

adjudication of the Google claims will dispose of the AOL Indirect Infringement Claims as well. *See Corry*, 16 F. Supp. 2d at 665.

Because (1) AOL is peripheral to plaintiff's Remaining Claims of infringement of the '132 and '835 patents, (2) adjudication of plaintiff's claims against Google likely will dispose of the AOL Indirect Infringement Claims, and (3) transfer of the Google claims is warranted under § 1404(a), this Court may sever the AOL Indirect Infringement Claims while transferring the Google claims. *See Inline Connection Corp.*, 402 F. Supp. 2d at 699. In the interests of justice, it follows that the severed AOL claims should be stayed pending disposition of the transferred claims. *Corry*, 16 F. Supp. 2d at 666.

## IV.    CONCLUSION

For the foregoing reasons, defendant Google respectfully requests that the Court (i) sever plaintiff's claim of direct infringement of the '835 patent with respect to AOL's Non-Google Advertising Technology and (ii) transfer the Remaining Claims to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Alternatively, Google requests that the Court (i) sever plaintiff's claims against AOL from this matter, (ii) transfer the claims against Google to the Northern District of California, and (iii) stay the AOL Indirect Infringement Claims pending resolution of the Google claims.

Dated:  August 17, 2012                         Respectfully submitted,


                                                 /s/ Stephen E. Noona
                                                Stephen E. Noona
                                                (Virginia State Bar No. 25367)
                                                Kaufman & Canoles, P.C.
                                                150 W. Main Street, Suite 2100
                                                Norfolk, VA 23510
                                                Telephone:  (757) 624.3239
                                                Facsimile:  (757) 624.3169
                                                senoona@kaufcan.com

                                                David A. Perlson *(pro hac vice)*
                                                David L. Bilsker *(pro hac vice)*
                                                Antonio R. Sistos *(pro hac vice)*
                                                Margaret P. Kammerud *(pro hac vice)*
                                                Rebecca A. Bers *(pro hac vice)*
                                                Quinn Emanuel Urquhart & Sullivan, LLP
                                                50 California Street, 22nd Floor
                                                San Francisco, CA  94111
                                                Telephone:  (415) 875-6600
                                                Facsimile:  (415) 875-6700
                                                davidperlson@quinnemanuel.com
                                                davidbilsker@quinnemanuel.com
                                                antoniosistos@quinnemanuel.com
                                                megkammerud@quinnemanuel.com
                                                rebeccabers@quinnemanuel.com

                                                *Counsel for Defendant Google Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2012, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig C. Reilly Esq.
Law Office of Craig C. Reilly
111 Oronoco Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Facsimile: (703) 549-2604
craig.reilly@ccreillylaw.com

Craig T. Merritt
Christian & Barton, LLP
909 E. Main Street, Suite 1200
Richmond VA 23219-3095
Telephone: (804) 697-4128
Facsimile: (804) 697-6128
cmerritt@cblaw.com

Roderick G. Dorman (pro hac vice)
Jeanne Irving (pro hac vice)
Alan P. Block (pro hac vice)
Jeffrey Huang (pro hac vice)
McKool Smith Hennigan P.C.
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234
rdorman@mckoolsmithhennigan.com
jirving@mckoolsmithhennigan.com
ablock@mckoolsmithhennigan.com
jhuang@mckoolsmithhennigan.com

Douglas A. Cawley (pro hac vice)
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
dcawley@mckoolsmithhennigan.com
acurry@mckoolsmithhennigan.com

*Counsel for Plaintiff*

Stephen E. Noona
(Virginia State Bar No. 25367)
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624.3239
Facsimile: (757) 624.3169
senoona@kaufcan.com

Bradford P. Lyerla *(pro hac vice)*
Paul D. Margolis *(pro hac vice)*
Joseph A. Saltiel *(pro hac vice)*
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel (312) 840-7476
Fax (312) 840-7576
blyerla@jenner.com
pmargolis@jenner.com
jsaltiel@jenner.com

*Counsel for Defendant AOL Inc.*

    */s/ Stephen E. Noona*
Stephen E. Noona
(Virginia State Bar No. 25367)
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624.3000
Facsimile: (757) 624.3169
senoona@kaufcan.com

01980.52056/4861046.8