IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SUFFOLK TECHNOLOGIES LLC, )
    Plaintiff, )
)
v. ) Case No. 1:12cv625
)
AOL INC. AND GOOGLE INC., )
    Defendants. )

## MEMORANDUM OPINION

In this patent infringement case, Suffolk Technologies LLC ("Suffolk"), the sole owner of U.S. Patent No. 6,081,835 ("the '835 patent"), sues defendant Google, Inc. ("Google")[1] for infringement and willful infringement of the '835 patent, which purports to cover several methods for controlling a server in response to requests for files from web pages. As is typical in a patent infringement suit, the parties dispute the meaning of several material claim terms and phrases, necessitating *Markman*[2] claim construction determinations.

On February 25, 2013, an Order issued setting forth the claim construction determinations.[3] This memorandum opinion sets forth the reasoning in support of the claim construction determinations.

---

[1] By Order dated January 30, 2013, the parties, pursuant to Rule 41, Fed.R.Civ.P., stipulated to the dismissal with prejudice of all claims asserted by Suffolk against defendant AOL Inc., and to all counterclaims by AOL Inc. against Suffolk. *See Suffolk Techs. v. AOL, Inc.*, No. 1:12cv625 (E.D. Va. Jan. 30, 2013) (Order).

[2] In *Markman v. Westview Instruments, Inc.*, the Supreme Court held that "the construction of a patent, including terms of art within its claim, is exclusively the province of the court." 517 U.S. 370, 372 (1996).

[3] *See Suffolk Technologies LLC v. AOL, Inc.*, No. 1:12cv625 (E.D. Va. Feb. 25, 2013) (Order).

– 1 –

## I.

The genesis of the '835 patent is not in dispute. In September 1995, British Telecommunications, plc ("BT") learned that a webpage that disparaged BT was using a BT logo obtained from a BT server. It appears that the operator of the disparaging webpage was able to obtain the BT logo from the BT server simply by directing internet browsers accessing the disparaging website to obtain the BT logo from the BT server and then to display the BT logo as part of the disparaging webpage on the user's computer screen. The BT server was not capable of controlling access to the BT logo based on the source of the request for the BT logo and the disparaging webpage took advantage of this weakness.

To remedy this situation, the inventors, BT employees, devised the method that is claimed in the '835 patent. In essence, the '835 patent teaches a method for operating a file server that entails using information about a requesting webpage to decide whether the server should send the requested file to the requesting webpage. The first step in the method begins with a file, such as an HTML file for a webpage, requesting a file from a server. The method goes on to provide that the server looks at the identification signal of the requesting file, compares this received identification signal with a set of predetermined identification signals, and then decides whether or not to fulfill the request for a file. In addition to sending the requested file, the second server may also, based on the received identification signal, (i) send a 'dummy' file in place of the requested file or (ii) send a newly generated file—that is a file newly created, or an existing file that is tailored, based on the identification signal. Thus, the '835 patent solved BT's problem, as the BT server would be able to determine whether the request for the BT logo originated from a non-approved webpage and could either refuse to provide the BT logo or provide a dummy file instead.

The inventors, Stuart Antcliff, John Regnault, and Laurence Bradley, filed the original application for the '835 patent with the United States Patent and Trademark Office ("PTO") on July 19, 1996. The inventors claim priority based on an April 4, 1996 United Kingdom application for the same method.[4] On March 11, 1997, the inventors filed a continuation-in-part application with the PTO. On March 29, 1999, the first Office Action issued, wherein the Examiner (i) rejected application claims 1, 2, 6, and 8–10 as having been anticipated by a patent to Graber, U.S. Patent No. 5,712,979, and (ii) rejected application claims 3–5 and 11–28 as being obvious over the Graber patents, in view of Weinman, "The CGI Book."

On July 28, 1999, the applicants responded to the Office Action by (i) cancelling claims 1–28 and, in place of those, (ii) adding application claims 29–46. More specifically, where application claim 1 required that the signal identify the 'origin' of the request, application claim 29 requires an identification signal to identify "an originating file from which said request originated." In addition to the new claims, the inventors argued that the obviousness rejection over the combination of Graber and the "CGI Book" was now addressed by the amended claims. In particular, the inventors argued that the "CGI Book" did not use identification signals; instead, it used an authorization process that required the manual entry of a user ID and password and, therefore, the "CGI Book" did not provide the identification element missing from the Graber patent.

---

[4] Following the issuance of the '835 patent, the inventors, all BT employees, assigned the patent to BT. Then, via a series of assignments, beginning with the BT assignment to IPValue, the patent was assigned to Suffolk. *See Suffolk Technologies, LLC v. AOL, Inc.*, --- F.Supp.2d ---, 2012 WL 6125377, at *2–3 (E.D. Va. Dec. 7, 2012) (Mem. Op.) (discussing history of the '835 patent title and finding that Suffolk had all right, title, and interest, and therefore standing to sue for infringement).

On October 12, 1999, the Examiner allowed all of the pending claims of the amended application and, as a result, application claim 29 issued as independent claim 1 of the '835 patent. The remaining 17 claims are dependent on claim 1.

The '835 patent consists of eighteen claims. The claims in issue at the time of the issuance of the Order setting forth the *Markman* determinations read as follows:

> 1. A method of operating a file server, said method comprising the steps of:
>
> receiving a request for a **file**;
>
> determining if the request includes a received **identification signal** identifying an originating file from which said request originated;
>
> comparing any said received identification signal with one or more predetermined **identification signals**; and
>
> deciding which **file**, if any, is to be supplied in dependence upon said determining and comparing steps, and if in the deciding step it is decided that a **file** is to be supplied, supplying said **file**.

Claims 2, and 6 through 9 depend on claim 1:

> 2. A method as in claim 1 wherein said supplied file is supplied only if said identification signal matches a said predetermined identification signal.
>
> 6. A method as in claim 1 wherein said deciding step further comprises **generating said supplied file**.
>
> 7. A method as in claim 1 wherein said request conforms to a hypertext transfer protocol.
>
> 8. A method as in claim 7 wherein said received identification signal includes a universal resource location address for said origination from which the request originated.
>
> 9. A method as in claim 1 in which said file server is connected to the internet and wherein said request is received via the internet.

The parties dispute the meaning of three claim terms, in bold above, as used in independent claim 1 and dependent claim 6. They are:

(i) "**file**," as used in claim 1;

(ii) **"identification signal,"** as used in claims 1 and 2; and,

(iii) **"generating said supplied file,"** as used in claim 6.

Further, Google argues that **"identification signal"** should be construed as used in two separate phrases. Specifically, Google argues that the following phrases require construction:

(i) "received identification signal identifying an originating file from which said request originated," as used in claim 1; and,

(ii) "predetermined identification signal" as used in claims 1 and 2.

As explained below, the uniform construction of the term **"identification signal"** obviates the need to construct these additional terms. Accordingly, the only terms requiring construction are: (i) "file, (ii) "identification signal," and (iii) "generating said supplied file."

## II.

Over the nearly two decades since *Markman*, the elucidation of claim construction principles has become well-plowed ground, although the plowed furrows have not always been straight lines. Nonetheless, the claim construction principles pertinent here are now well-settled.[5] They are as follows:

First, and importantly, "the claim construction analysis must begin and remain centered on the claim language itself" because a "bedrock principle" of patent law is that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115–16 (Fed. Cir. 2004). Accordingly, a court must "look to the words themselves . . . to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). And the

---

[5] The Federal Circuit's en banc opinion in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), sets forth the bedrock principles of claim construction. *See also* Patent Claim Construction in the Federal Circuit (Edward D. Manzo ed., 2012).

"words of a claim are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (internal quotation marks omitted). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1313. A person of ordinary skill in the art "is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). In the event the ordinary meaning of a claim is not apparent, then a court—just as would a person of ordinary skill in the art—may look to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova/Pure Water*, 381 F.3d at 1116. In general, courts engaging in claim construction follow a hierarchy of evidence: (i) claim language, (ii) other intrinsic evidence—*i.e.*, the specification, the remainder of the patent, and the prosecution history, and (iii) extrinsic evidence—*i.e.*, evidence that is external to the patent and prosecution history, such as expert testimony, dictionaries, or treatises. *See Advanced Cardiovascular Sys. v. Medtronic*, 265 F.3d 1294, 1304 (Fed. Cir. 2001). Importantly, the claim construction effort should focus on the intrinsic evidence, and only if that evidence does not yield the answer, should a court proceed to extrinsic evidence. *Vitronics*, 90 F.3d at 1583.

The Federal Circuit has recognized that the specification is "the single best guide to the meaning of a disputed term" and is often "dispositive." *Phillips*, 415 F.3d at 1315. Yet, courts must be cautious in using the specification to avoid limiting the scope of the claims by importing limitations of such embodiments into the scope of the claims. In this respect, there is "a fine line

between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Id.* at 1323. Indeed, to read "a limitation from the written description into the claims" is a "cardinal sin" of patent claim construction. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340–41 (Fed. Cir. 2001).

It is true, of course, that "a patentee is free to be his own lexicographer" and to give claim terms his own specific meaning. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995). When a patentee acts as his own lexicographer, he may "use terms in a manner other than their ordinary meaning[.]" *Vitronics*, 90 F.3d at 1582. Importantly, a patentee acting as his own lexicographer must "define the specific terms used to describe his or her invention . . . with reasonable clarity, deliberateness, and precision." *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). Thus, any statement in the specification relied on to support the contention that the patentee acted as his own lexicographer "must have sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term." *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005). Although a patentee may "define claim terms by implication,"[6] the implied redefinition must also "be so clear that it equates to an explicit one." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012).

Thus, the claim construction analysis here begins with the application of these principles to the disputed claim terms. But importantly, as the Federal Circuit has noted, these "axioms themselves seldom provide an answer, but instead merely frame the question to be resolved." *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). Indeed, the Federal

---

[6] *Bell Atl. Network Servs., Inc. v. Covad Comm'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001).

-7-

Circuit's guidance on claim construction does "not attempt to provide a rigid algorithm, but simply attempt[s] to explain why, in general, certain types of evidence are more valuable than others." *Phillips*, 415 F.3d at 1324.

### III.

#### A. "file"

The term "file" appears throughout the claims of the '835 patent. The parties agree in part on the definition, namely that a file is a "collection of information." Suffolk proposes the construction, "a collection of information that is treated as a unit," while Google proposes the construction, "a collection of information stored as a unit and identifiable by its location on a file server, in a directory, by a name." The claim construction principle that is dispositive here is that the specification is the "single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. The application of this principle to the '835 patent compels the conclusion that "file" means "a collection of information that is treated as a unit and stored on, or created by, a server."

Here, a reading of the specification and claim 1 makes clear that a file at least has the meaning of "a collection of information that is treated as a unit." And it is also clear from a close reading of claims that a file must either exist on, or be created by, a server. This limitation is necessary as the only "file" contemplated by the claim is one that exists, or can be created by, a server. Claim 1 contemplates two files, an originating file that makes the request, and the requested file. Yet, both files must either exist on a server or be created by a server. If the originating request arises from a file, the only originating file contemplated by the claim is a file obtained from another server that is generating the request for the second file. The requested file may either be (i) a file that already exists on the server or (ii) a file that is generated—created or

tailored—by a server in response to the request. Accordingly, a file must exist on, or be created by, a server.

Google argues that file must be defined to mean that it is identified by its location on a file server, in a directory. But this meaning does not encompass the patent's claim involving the creation of a file by a server in response to a request. It is clear from the claims that this generated file is not limited to one that is identifiable by its location—indeed, it does not exist until the server creates it in response to a request. *See* '835 Patent, 6:39–41 ("In this embodiment the server runs an application which takes in the referrer address and generates a new HTML file.") Google also makes a further argument to the effect that the patent requires that a 'file' be located in a directory, by name and, in support of this, Google points to the language discussing identifying files by the URL. This argument also fails, as the '835 Patent makes clear that such a means of identifying a file is only one embodiment, and "the invention may also be applicable to FTP . . . and Telnet applications and other such future applications." '835 Patent, 7:24–28. Accordingly, it would be a cardinal sin to import a limitation on the claim from the embodiments. *See Phillips*, 415 F.3d at 1323 (noting the fine line between reading "a claim in light of the specification" and impermissibly "reading a limitation into the claim from the specification").

### B. "identification signal"

The term "identification signal" appears in independent claim 1, as well as in several dependent claims of the '835 patent. The parties disagree on the proper construction of this phrase; as is typical in these disputes, the patentee seeks a broad construction of the term to enlarge the scope of the patent coverage, while the putative infringer seeks a construction with an eye toward vindicating its non-infringement or invalidity arguments. Here, Suffolk, on the one

hand, contends that only the phrase "identification signal" requires construction and that the proper construction of this phrase is "digital information that identifies a file." Google, on the other hand, contends two separate phrases appearing in claim 1 that include "identification signal" must be construed separately. Google proposes that "received identification signal identifying an originating file" means "unique source-identifying information for the requesting file." Google then proposes that "predetermined identification signals" means "predetermined source identifying information (e.g., file or server address)."

Two claim construction principles are pertinent here. First, "a claim should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent"[7] and second, that the specification is the "best guide to the meaning of a disputed term."[8] These principles, applied here, point persuasively to the conclusion that a person of ordinary skill in the art would conclude that "identification signal" is properly construed uniformly throughout the patent as "digital information that identifies the source, origin, or location of a file."

To begin with, no one disputes that "identification signal" is "digital information." And the key to giving a uniform definition consistent with the intrinsic evidence is the fact that the patent claims and the specification clearly refer to the "identification signal" conveying some identifying information. Indeed, the parties agree on this point, but disagree whether and how this should be taken into account in defining "identification signal." It is clear from a close reading of the specification and the claims that the identification signal must convey some information about the source, origin, or location of the file. First, the summary of the invention explains that the method uses the "referrer address or URL . . . to identify the route taken in

---

[7] *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).

[8] *Phillips*, 415 F.3d at 1315.

requesting the file from the internet server." '835 Patent, 3:47–49. Thus, the method uses digital information, namely the referrer address or URL, that identifies the source, origin, or location of the request as the identification signal.

Second, each embodiment in the patent specification contemplates the use of the URL from the referring address field of the request as an identification signal.[9] And this URL conveys information about the source, origin, or location of the requesting file. As the '835 patent explains, "[s]ince the HTTP protocol provides for the transmission of the URL of the HTML file . . . , the server which receives the request . . . can determine the origin of the request[.]" '835 Patent, 5:10–14. Thus, in one embodiment, the "server looks at this referrer address [the URL of the HTML file from which the request originated] and decides what file to send to the browser using the referrer address[.]" *Id.* at 4:66–5:1. In other words, this embodiment is using digital information about the source, origin, or location of a file as an identification signal. In another embodiment, the "server looks at the referrer address which refers to the URL of the HTML file . . . and the server runs an application using the referrer address . . . [to] generate an HTML file[.]" *Id.* at 6:27–33. Thus, this embodiment also uses digital information about the source, origin, or location of a file as the identification signal.

Finally, even though the specification provides that the invention is not restricted to hypertext transfer protocol, and may also be applicable to "FTP (File Transfer Protocol) and Telnet applications and other such future applications," *id.* at 7:25–28, it is clear that regardless of the application used to request a file from the server, the identification signal provides specific information about the requesting file's origin, source, or location. Accordingly, a close

---

[9] These embodiments do not limit the claims of the '835 patent to HTTP—to import such a limitation would be a "cardinal sin" of claim construction. *See SciMed Life Sys.*, 242 F.3d at 1340–41.

examination of the specification makes clear that an "identification signal" is properly construed to mean "digital information that identifies the source, origin, or location of a file."

Instead of constructing only the term "identification signal," Google has identified and offered construction for two separate phrases. Each phrase identified by Google consists of the disputed term "identification signal" and a modifier. Thus, Google does not argue that "identification signal" must have two separate constructions; instead, Google argues that the "received identification signal" phrase has a different meaning from the "predetermined identification signal." First, Google is correct in supplying a consistent definition of "identification signal," as where a word is used in conjunction with two different modifiers, the word "presumptively should carry the same meaning throughout the patent." *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1337 (Fed. Cir. 2008). Second, Google is also correct in arguing that the two phrases which it identified have different meanings. Yet, Google's proposed definitions are redundant at best, and would more likely merely serve to introduce confusion rather than clarity. The difference in meaning between the two phrases identified by Google is made clear by application of the plain language of Claim 1 to a uniformly defined "identification signal."

Suffolk argues that "identification signal" need only be construed as "digital information that identifies a file," because someone of ordinary skill in the art at the time of the invention would understand "signal" to mean "digital information," and thus the combination of "identification" with "signal" leads to the construction "digital information that identifies a file." Yet, this argument is not persuasive because it is clear from the specification that the "identification signal" conveys specific information about the requesting file, namely the origin, source, or location of the file. *See e.g. id.* 3:51–52 ("[b]y interrogating the referrer address, a

examination of the specification makes clear that an "identification signal" is properly construed to mean "digital information that identifies the source, origin, or location of a file."

Instead of constructing only the term "identification signal," Google has identified and offered construction for two separate phrases. Each phrase identified by Google consists of the disputed term "identification signal" and a modifier. Thus, Google does not argue that "identification signal" must have two separate constructions; instead, Google argues that the "received identification signal" phrase has a different meaning from the "predetermined identification signal." First, Google is correct in supplying a consistent definition of "identification signal," as where a word is used in conjunction with two different modifiers, the word "presumptively should carry the same meaning throughout the patent." *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1337 (Fed. Cir. 2008). Second, Google is also correct in arguing that the two phrases which it identified have different meanings. Yet, Google's proposed definitions are redundant at best, and would more likely merely serve to introduce confusion rather than clarity. The difference in meaning between the two phrases identified by Google is made clear by application of the plain language of Claim 1 to a uniformly defined "identification signal."

Suffolk argues that "identification signal" need only be construed as "digital information that identifies a file," because someone of ordinary skill in the art at the time of the invention would understand "signal" to mean "digital information," and thus the combination of "identification" with "signal" leads to the construction "digital information that identifies a file." Yet, this argument is not persuasive because it is clear from the specification that the "identification signal" conveys specific information about the requesting file, namely the origin, source, or location of the file. *See e.g. id.* 3:51–52 ("[b]y interrogating the referrer address, a

examination of the specification makes clear that an "identification signal" is properly construed to mean "digital information that identifies the source, origin, or location of a file."

Instead of constructing only the term "identification signal," Google has identified and offered construction for two separate phrases. Each phrase identified by Google consists of the disputed term "identification signal" and a modifier. Thus, Google does not argue that "identification signal" must have two separate constructions; instead, Google argues that the "received identification signal" phrase has a different meaning from the "predetermined identification signal." First, Google is correct in supplying a consistent definition of "identification signal," as where a word is used in conjunction with two different modifiers, the word "presumptively should carry the same meaning throughout the patent." *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1337 (Fed. Cir. 2008). Second, Google is also correct in arguing that the two phrases which it identified have different meanings. Yet, Google's proposed definitions are redundant at best, and would more likely merely serve to introduce confusion rather than clarity. The difference in meaning between the two phrases identified by Google is made clear by application of the plain language of Claim 1 to a uniformly defined "identification signal."

Suffolk argues that "identification signal" need only be construed as "digital information that identifies a file," because someone of ordinary skill in the art at the time of the invention would understand "signal" to mean "digital information," and thus the combination of "identification" with "signal" leads to the construction "digital information that identifies a file." Yet, this argument is not persuasive because it is clear from the specification that the "identification signal" conveys specific information about the requesting file, namely the origin, source, or location of the file. *See e.g. id.* 3:51–52 ("[b]y interrogating the referrer address, a

second server is able to control access"); 3:67–4:1 ("the sever is able to identify from which web page the HTML file request is made); 4:66–67 ("the server looks at this referrer address and decides what file to send to the browser").

### C. "generating said supplied file"

The term "generating said supplied file" appears in claim 6. The parties agree on part of the definition, namely "creating or tailoring a file, as distinct from selecting an existing file, in dependence upon." But they disagree as to the remainder of the definition. Suffolk argues that the proper construction is "creating or tailoring a file, as distinct from selecting an existing file, in dependence upon the originating file." In contrast, Google argues that the proper construction is "creating or tailoring a file, as distinct from selecting an existing file, in dependence upon the received identification signal identifying an originating file." The basic claim construction principle that courts should first look to the language of the claims themselves is dispositive. *See Innova/Pure Water*, 381 F.3d at 1116. Thus, "generating said supplied file" is properly construed to mean "creating or tailoring a file, as distinct from selecting an existing file, in dependence upon the received identification signal."

The term "generating said supplied file" appears in claim 6, which states in full "[a] method as in claim 1 wherein said deciding step further comprises generating said supplied file." Claim 6, then, directs a reader of the patent to the deciding step in claim 1, which states, in pertinent part, "deciding which file, if any, is to be supplied in dependence upon said determining and comparing steps[.]" Thus, this step then directs the reader to the determining and comparing steps of claim 1, which provide, in pertinent part,

> determining if the request includes a received identification signal identifying an originating file from which said request originated;
>
> comparing any said received identification signal with one or more predetermined identification signals[.]

– 13 –

It is clear, then, from the language of claims 1 and 6, viewed together, that "generating said supplied filed" is a step that occurs after the server decides which file to send, pursuant to the deciding step of claim 1. In order to engage in the deciding step, the server must have engaged in the determining and comparing steps, both of which depend on the received identification signal. Put simply, the only way a server in the '835 patent can go about creating or tailoring a file in claim 6 is by processing the "identification signal" in claim 1. Thus, "generating said supplied file" must mean "creating or tailoring a file, as distinct from selecting an existing file, in dependence upon the received identification signal" (claim 1's determining, comparing, and deciding step). This result is further compelled by claim 1's determining and comparing steps—both of which are required by claim 1's deciding step upon which claim 6 depends—which rely upon the received identification signal.

Suffolk argues that adopting this construction would be erroneous because the patentees have acted as their own lexicographer, and therefore, the term "generating said supplied file" has a special meaning, as used in the '835 patent. Suffolk cites several cases for the general proposition that a patentee may implicitly act as his own lexicographer. *See, e.g., Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1382–83 (Fed. Cir. 2011); *SciMed Life Sys.*, 242 F.3d at 1339–44. In addition, Suffolk points to the specification, wherein the example of the content that would be generated by claim 6 is described as "in dependence upon the current web page being displayed by the browser[.]" '835 Patent at 4:2–7.

This argument is unpersuasive. The Federal Circuit has made clear that "the 'implied' redefinition must be so clear that it equates to an explicit one." *Thorner*, 669 F.3d at 1368. In *Thorner*, the Federal Circuit explained that "[s]imply referring to two terms as alternatives or disclosing embodiments that all use the term the same way is not sufficient to redefine a claim

term." *Id.* Here, there simply has not been an implicit "redefinition" that is so clear as to equate an explicit redefinition. Indeed, there does not appear to have been any "redefinition," explicit or implicit, as the specification is consistent with the plain language of the claims. Every embodiment that discusses the generation of files describes such generation as depending on an identification signal (e.g., the URL in the referring address information of the HTML file). And the embodiment that specifically describes claim 6 explains that "the server runs an application which takes in the referrer address [identification signal] and generates a new HTML file." '835 Patent at 6:39–41. Accordingly, it is clear that the "creating or tailoring of a file" that occurs in claim 6 is in dependence upon the received identification signal and thus, there is nothing in the specification to support Suffolk's contention that the patentee was impliedly acting as his own lexicographer.

## IV.

In summary, for the reasons stated, the disputed claim terms are determined to have the following constructions:

- "**file**": "a collection of information that is treated as a unit and stored on, or created by, a server."

- "**identification signal**": "digital information that identifies the source, origin, or location of a file."

- "**generating said supplied file**": "creating or tailoring a file, as distinct from selecting an existing file, in dependence upon the received identification signal."

An Order issued on February 25, 2013 setting forth these claim construction determinations.

Alexandria, VA
April 18, 2013

/s/
T. S. Ellis, III
United States District Judge